**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

OLLIE M. HERRIN and
PANSY HERRIN,

 Plaintiffs,        CASE NO. 05-CV-10245

v.              DISTRICT JUDGE DAVID M. LAWSON
               MAGISTRATE JUDGE CHARLES BINDER
TROOPER ROBERT DUNHAM,
DETECTIVE MARK PENTIGRAPH,
MICHIGAN STATE POLICE, MARK
REENE, and TUSCOLA COUNTY,

 Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
(Dkts. 32, 34)

**I. RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motions for summary judgment be **GRANTED** and the case dismissed in its entirety with prejudice.

**II. REPORT**

 **A. Introduction**

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on December 6, 2005. (Dkt. 5.)

Pending are the above-entitled motions filed by Defendants Dunham, Pentigraph and Michigan State Police ("State Defendants") (Dkt. 32) and Defendants Reene and Tuscola County. (Dkt. 34.) Plaintiffs filed a response opposing the motion (Dkt. 38), and the State Defendants filed

a reply (Dkt. 41). Oral argument was held on January 23, 2008. Therefore, the motion is now ready for Report and Recommendation.

**B.　　Facts**[1]

On or about July 13, 2001, Defendants Troopers Dunham and Pentigraph, apparently acting under their authority as motor carrier enforcement officers, seized a 1999 dump truck, a 2001 GMC pickup truck, a 2001 flatbed trailer, a 1999 premiere travel trailer, a 2001 bobcat skidloader, an asphalt roller, and various hand tools belonging to Plaintiffs, who are residents of Indiana. At the time of seizure, the property was located at the Holiday Shores Resort Campground in Shiawassee County. The vehicles were moved to Complete Towing in Flint for storage. Approximately four days later, Defendant Trooper Dunham sought and obtained a search warrant authorizing a search of these vehicles for "any and all evidence relating to the identity of the owner(s) and/or user(s) of the above referenced items; any and all evidence relating to the business operation of the owners/and/or users . . . ." (Compl., Dkt.1 at Ex. 1.) In the affidavit supporting the search warrant, Trooper Dunham stated that the search was requested in support of an investigation "involving potential fraudulent/larcenous activity in the Vassar Township [area] . . . being committed by individuals associated with an asphalt paving business[.] . . ." (*Id*. at 2.) A state magistrate approved the search warrant. (*Id*. at 4.) Returns on the search warrant indicate the seizure of license plates, registration certificates, vehicle identification certificates, receipts, business cards, court and business-related paperwork, photographs, identification documents, and checkbooks. (*Id*. at 6-11.)[2]

---

[1]This statement of facts is based entirely upon Plaintiffs' complaint and attached exhibits.

[2]Pages 10 and 11 of this exhibit are unnumbered.

Shortly after the seizure of the property, Plaintiffs apparently retained counsel, and on September 7, 2001, counsel made inquiries of the Tuscola County prosecutor's office and others relating to the return of the seized vehicles. (*Id.* at Exs. 3, 4, 5 & 6.) Tuscola County authorities, however, never initiated either the forfeiture of this property or any criminal proceedings against the Plaintiffs. At some point subsequent to the search, however, Tuscola County Assistant Prosecutor Reene did place a "prosecutor's hold" on the property, preventing Plaintiffs from recovering the property from Complete Towing. Finally in late November 2004,[3] the Michigan State Police sent to Plaintiffs a "Notice of Abandoned Vehicle" for the 2001 flatbed trailer and the 1999 travel trailer.

Ultimately, proceedings were started in the Michigan District 71-B Court in Tuscola County for the return of the vehicles. A hearing was held before state District Judge David Glaspie on January 19, 2005. After oral argument, Judge Glaspie ruled from the bench that the seizures were improper and directed that "the vehicles [ . . . ] be immediately released to the owner[.]" (*Id.*, Ex. 2 at 10-11.) After the return of the travel trailer, Plaintiffs inspected the trailer and found its walls and carpet ruined.

Plaintiff filed the instant two-count complaint in this Court on September 15, 2005. Count one alleges violations of Plaintiff's Fourth and Fourteenth Amendment rights. Count two alleges a violation of 42 U.S.C. § 1983. Plaintiffs seek the award of approximately $265,000.00 for loss of their property and $10,000,000.00 damages for violation of Plaintiff's constitutionally protected rights.

---

[3]This document is referenced in Plaintiffs' complaint, however, the date of issuance appearing in the complaint appears to be a typographical error. (Compl. ¶ 17.) The correct date is found in an exhibit attached to Plaintiffs' response. (Dkt. 9 at Ex. 1.)

**C.     Law and Analysis**

**1.     Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is

"utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

2.  **Arguments of the Parties**

Defendants Reene and Tuscola County argue that Plaintiffs' cause of action accrued at the time of the seizure, i.e., on July 31, 2001, and since Plaintiffs did not file the instant action until September 15, 2005, the claim is barred by the applicable three-year statute of limitations. (Dkt. 34 at 6.) They also argue that preserving assets for forfeiture is a prosecutorial function entitled to absolute immunity. (Dkt. 34 at 6-7.) They further contend that since Plaintiff has not plead the inadequacy of state post-deprivation remedies, Plaintiffs have not stated a claim for violation of their due process rights. (Dkt. 34 at 7-8.) Finally, they assert that Tuscola County cannot be held vicariously liable for the acts of Defendant Reene. (Dkt. 34 at 8-9.)

The State Defendants argue that they are entitled to qualified immunity because there was no violation of any clearly established constitutionally protected rights and the Defendants acted reasonably. (Dkt. 32 at 11-17.)[4] They also contend that any claim for money damages against the

---

[4]This Report does not reach the qualified immunity argument because I suggest that summary judgment is warranted on several other grounds.

Michigan State Police is barred by Eleventh Amendment immunity. (Dkt. 32 at 17-18.) They further contend that since the complaint does not specify whether the individual Defendants are being sued in their official or individual capacity, official capacity is presumed and thus, the claims against the individual Defendants are also barred by Eleventh Amendment immunity. (Dkt. 32 at 18-19.) Plaintiffs dispute these arguments and maintain that Defendants' actions amount to deprivations of their constitutionally protected rights.

3.  **Due Process: Post-deprivation Remedies - All Defendants**

In order to prevail on a procedural due process claim in the Sixth Circuit, plaintiff must: (1) demonstrate that he is deprived of liberty or property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendants deprived him of liberty or property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).[5] Plaintiffs have the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiffs have not alleged that established state procedures violate due process rights nor has he alleged the absence of state remedies to redress any procedural wrong; therefore, I suggest that summary judgment in favor of defendants could be granted as to the procedural due process claim on this ground alone.

4.  **Statute of Limitations - All Defendants**

Defendants Reene and Tuscola County argue that Plaintiffs' cause of action accrued at the time of the seizure, i.e., on July 31, 2001, and since Plaintiffs did not file the instant action until

---

[5]This holding is derived from *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986), which held that deprivation of liberty or property interests by state employees do not give rise to federal due process claims unless the state fails to afford an adequate post-deprivation remedy. Thus, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

September 15, 2005, the claim is barred by the applicable three-year statute of limitations. (Dkt. 34 at 6.) In a previous Order, Judge Lawson stated that the "seizure of property continues until the interference ends" and therefore applied what appears to be a continuing violation theory to conclude that the statue of limitations had not expired. (Dkt. 18 at 5.) However, since I did not fully explore the statute of limitations issue in my initial Report, I will discuss it at greater length here.

The statute of limitations for civil rights actions under 42 U.S.C. § 1983 is defined by state law. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. MICH. COMP. LAWS § 600.5805(8); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Although statutes of limitations are governed by state law, the question of when civil rights claims accrue remains one of federal law. *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 1095, ___ L. Ed. 2d ___ (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law and is *not* resolved by reference to state law."); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995). Accrual occurs "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 127 S. Ct. at 1095 (citations omitted).

"[A] continuing violation is occasioned by continued unlawful acts, not continual ill effects from an original violation." *Tolbert v. State Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). "[C]urrent effects alone cannot breathe life into prior [acts] . . . such effects in themselves have 'no present legal consequences.'" *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, ___ U.S. ___, 127 S. Ct. 2162, 2169, ___ L. Ed. 2d ___ (2007) (holding that new charging period does not begin

upon subsequent nondiscriminatory acts that entail adverse effects resulting from past discrimination). "Passive inaction does not support a continuing violation theory." *Eidson v. Tennessee Dep't of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007) (holding that where removal of children was based on perjured testimony, continued prosecution of neglect petition and interference with custody and visitation was not a continuing violation but rather was continued ill effects of initial wrongful removal of the children).

The instant cause of action accrued when the alleged illegal seizure occurred. *Ayers v. United States of America*, No. 98-3571, 1999 WL 617965, *1 (6th Cir. Aug. 12, 1999) (finding that illegal seizure claim accrued when plaintiff knew property was taken and was untimely without applying continuing violation theory); *Micklin v. Goodell*, No. 1:07-CV-237, 2008 WL 58985, *3 (W.D. Mich. Jan. 3, 2008) (finding that illegal search and seizure claim accrued at the time of the search and seizure); *James v. United States of America*, No. 96-2874-Civ-ATKINS, 1997 WL 1037822, *3 (S.D. Fla. Sept. 12, 1997) (a "claim for deprivation of property through illegal search and seizure accrues when the property is seized"). "A plaintiff need not know the full extent of his injuries before his claim accrues; he must merely be sufficiently aware of his injury to put him on inquiry notice." *Ritter v. Francis*, No. 07-CV-46-KSF, 2007 WL 1695221, *4 (E.D. Ky. June 8, 2007) (finding on-going effects of surgery were not continuing violations but rather ill effects of initial surgery) (*citing Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)).

Since the alleged wrongful retention of property concerns the continued ill effects of the initial wrongful seizure, I suggest that the continuing violation theory does not apply. *Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 210 (S.D. Ohio 1987) ("plaintiffs' injury occurred, at the latest, on the date that their property was unreasonably seized and retained without due process" and holding that continuing violation theory did not apply because "the

injury arises from the unlawful act of seizure of the property [and] [t]he fact that defendants retained the seized property is merely a consequence of the alleged illegal seizure and any unlawful injuries sustained by plaintiffs stem from that single unlawful act"); *accord Macnamara v. Hess*, 67 Fed. App'x 139, 143 (3rd Cir. 2003) (finding wrongful seizure of property accrued when search and seizure occurred and declining to apply continuing violation theory because "the retention of the seized property is only a consequence of the original alleged illegal seizure and does not affect the date on which the claim accrues"); *Johnson v. Cullen*, 925 F. Supp. 244, 249 (D. Del. 1996) ("cases have uniformly held that in section 1983 cases concerning deprivation of one's property [that] the violation of one's civil rights accrues when the property is seized" and holding that the continuing violation theory did not apply because "the alleged deprivation of property in this case involved a singular act, *i.e.,* the seizure of property pursuant to a writ later adjudged invalid" and "[a]lthough plaintiffs were deprived of their property until it was returned to them, that was the continual ill effect of the original act of seizure"); *Mann v. Linn*, No. 06-108 (WOB), 2007 WL 1662689, *2 (E.D. Ky. June 7, 2007) (continuing violation theory did not apply to due process claim based on continued enforcement of domestic violence order), contrasting *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 521-22 (6th Cir. 1997) (holding that ordinance actively deprived company of substantive due process rights "every day that it remained in effect" and therefore worked an "ongoing violation of constitutional rights" allowing potential plaintiffs to bring suit when effected by the ordinance, even if they did not suffer from its enforcement until several years after the ordinance was passed); *Mann v. Compton*, No. 06-109, 2007 WL 854725. *2 (E.D. Ky. Mar. 16, 2007) (continuing violation theory did not apply to plaintiffs' constitutional challenge to a raid occurring at his home despite his argument that they remained incarcerated or on probation as a result of their subsequent convictions), contrasting *Kuhnle, supra*.

Accordingly, I suggest that summary judgment in favor of all Defendants be granted based on the statute of limitations.

 5. **Eleventh Amendment Immunity - All Defendants**

The State Defendants contend that since the complaint does not specify whether the individual Defendants are being sued in their official or individual capacity, that official capacity is presumed and thus, the claims for money damages against the individual Defendants are barred by Eleventh Amendment immunity, as are the claims against the Michigan State Police. (Dkt. 32 at 18-19.) In Plaintiffs' response to Defendant Reene and Tuscola County's motion, Plaintiffs state that "[i]n the case at bar Prosecutor Mark Reene is being sued in his Official Capacity. Municipal entities are not eligible for qualified immunity. Therefore, Mark Reene and Tuscola County are barred from claiming qualified immunity." (Dkt. 39 at 13.) In Plaintiffs' response to the State Defendants' motion, Plaintiffs state that "Defendants Dunham and Pendergraff are brought in this suit in their official capacity while acting 'under the color of state'[sic]" and that "[q]ualified immunity protects government official [sic] from suit only in their individual capacity." (Dkt. 38 at 1, ¶¶ 1, 2.) Counsel for Plaintiffs conceded as much during oral argument. Unfortunately for Plaintiffs, a party is bound by the acts of his or her lawyer who acts as the party's agent. Thus, Plaintiffs "cannot now avoid the consequences of the acts" of his attorney and agent. *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 524 (6th Cir. 2006).

The law is clear that regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed.

2d 1114 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Mich.*, 803 F.2d 874, 877 (6th Cir. 1986). Since a suit against a public employee in his or her official capacity is a suit against an agency of or the state itself, Eleventh Amendment immunity bars actions against state and county officials in their official capacity for any relief other than prospective, e.g. injunctive, relief. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007) (*citing Pennhurst*, 465 U.S. at 117-21). *See also Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654, n.8 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 673-74 (2007). Since Plaintiffs seek money damages rather than prospective relief, I suggest that their claims against Defendants are barred by the Eleventh Amendment. Therefore, I suggest that all Defendants are entitled to summary judgment on this ground as well.

### 6. Absolute Prosecutorial Immunity - Defendant Reene

As an alternative ground for summary judgment, Defendant Reene argues that preserving assets for forfeiture is a prosecutorial function entitled to absolute immunity. (Dkt. 34 at 6-7.) As Judge Lawson noted, the first Report did not address this issue. (Dkt. 18 at 6.) Judge Lawson further found that it was "not immediately apparent from the facts of the complaint, however, that the function of placing a 'hold' on property amounts to a prosecutorial function or an investigative function," thus he denied summary judgment. (Dkt. 18 at 7-8.) I suggest that summary judgment based on absolute prosecutorial immunity continues to be inappropriate.

"[A] prosecuting attorney will only receive absolute immunity for activities that were 'an integral part of the judicial process.'" *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (concluding prosecutor not entitled to absolute immunity for coercing and threatening a witness

11

to continue to testify falsely post-trial and during administrative investigation). Since the United States Supreme Court had previously concluded that "the knowing use of false testimony and the suppression of material evidence at [a defendant's] criminal trial were 'intimately associated' with the judicial phase of the criminal process thereby triggering absolute immunity, the Court did not address what other activities might also be 'integral.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 413, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Since *Imbler*, courts have taken a "functional approach" and "have concluded that a prosecutor is protected 'in connection with his duties in functioning as a prosecutor.'" *Id.* (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). The "critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis in original). The types of activities that have been considered as within the advocacy role of the prosecutor's office such that absolute immunity applies are claims for malicious prosecution, appearance at a probable cause hearing and before a grand jury, evaluation of evidence, preparation of witnesses for trial, and the knowing presentation of false testimony. *Spurlock*, 330 F.3d at 797-98 (citations provided therein). Similarly, the decisions to provide or withhold evidence during trial preparation is "intimately associated" with the judicial phase and is a function of his "role as an advocate." *Imbler, supra; Holloway, supra*. This immunity extends to all decisions to prosecute except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)).

"A prosecutor seeking a seizure warrant is performing 'the preparation necessary to prosecute a case' and such preparation is encompassed within the prosecutor's advocacy function"

and thus entitled to absolute immunity. *Schrob v. Catterson,* 948 F.2d 1402, 1416 (3rd Cir. 1991) (*cited with approval in Juide v. City of Ann Arbor*, 839 F. Supp. 497, 502 (E.D. Mich. 1993) (finding that prosecutor entitled to absolute immunity for initiating forfeiture proceeding). If a prosecutor retains property to preserve the property for direct appeal or for habeas corpus proceedings, this function is also entitled to absolute immunity. *Parkinson v. Cozzolino*, 238 F.3d 145, 152 (2nd Cir. 2001) (holding that absolute immunity shielded prosecutor from liability for the retention of evidence after conviction but while a direct appeal was pending because "the retention of evidence, as a predicate to the presentation of evidence, is critical to the prosecutor's function as an advocate, and is thus covered by prosecutorial immunity"); *accord Kohl v. Casson*, 5 F.3d 1141, 1147 (8th Cir. 1993) (absolute immunity applied where prosecutor only held money so long as prosecution remained viable); *Thompson v. Walbran*, 990 F.2d 403, 404-05 (1993) (absolute immunity applied to retention of important evidence that would be needed at trial if plaintiff succeeded on appeal or in a 2255 motion). However, the "retention and alleged mismanagement of the seized property" that is not used as evidence falls within the breadth of administrative functions for which the prosecutor is only entitled to qualified immunity. *Schrob*, 948 F.2d at 1416-17; *accord Reitz v. County of Bucks*, 125 F.3d 139, 146-47 (3rd. Cir. 1997) (qualified immunity applied to claim regarding delay in returning property after trial); *Coleman v. Turpen*, 697 F.2d 1341, 1346 (10th Cir. 1982) (no absolute immunity for management of seized property not used as evidence); *Crumpton v. Podolak*, 171 Fed. App'x 745, 749 (10th Cir. 2006) (reversing dismissal of claims against prosecutor for retention of property after the conclusion of plaintiff's criminal case, remanding for district court to address potential qualified immunity); *Morris v. Jackson*, 353 F. Supp. 2d 1199, 1202 (D. Ala. 2005) (qualified rather than absolute immunity applied to prosecutor's continued retention of property after grand jury failed to indict); *Roderick*

*v. City Gulfport*, 144 F. Supp. 2d 622, 636-37 (S.D. Miss. 2000) (no absolute immunity for retaining property after conclusion of criminal case). To hold otherwise would "allow the government to seize [and continue to retain] property without accountability." *Schrob*, 948 F.2d at 1420.

Applying these standards to Plaintiffs' allegations that Defendant Reene improperly refused to return property where no charges were brought against Plaintiffs and no forfeiture action was taken against the property itself, I suggest that Defendant Reene was not acting as a advocate preserving evidence but was acting in an administrative function for which he is not entitled to absolute immunity. Accordingly, I suggest that Defendants Reene and Tuscola County are not entitled to absolute immunity and that summary judgment should not be granted on this alternative ground.

### 7. Vicarious Liability - Defendant Tuscola County

Defendant Tuscola County also argues that it cannot be held vicariously liable for the acts of Defendant Reene. (Dkt. 34 at 8-9.) I suggest that Plaintiffs have failed to state a claim against Tuscola County because they have not alleged a sufficient level of involvement on the County's part. Liability under section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th

Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not alleged that Defendant Tuscola County had any knowledge of the facts underlying his claims or that they implicitly encouraged, authorized, approved or acquiesced in any way. Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint, however, is not enough to sustain recovery under section 1983. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978); *Gilmore v. Corrections Corp. of America*, 92 Fed. App'x 188, 190 (6th Cir. 2004). Therefore, I suggest that Defendant Tuscola County is entitled to summary judgment on this ground as well.

**8.    Conclusion**

For all the reasons stated above, I suggest that summary judgment should be granted in favor of all Defendants and that this case be dismissed in its entirety with prejudice.

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*,

474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

              s/ *Charles E. Binder*
              CHARLES E. BINDER
Dated: March 17, 2008      United States Magistrate Judge


## CERTIFICATION

 I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Audrey J. Forbush, Erik A. Grill, Dianne M. Longoria, and served on U.S. District Judge Lawson in the traditional manner.

Date: March 17, 2008    By  s/Patricia T. Morris
              Law Clerk to Magistrate Judge Binder